IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BARTOLO S. ZORRILLA-BAUTISTA,

     Petitioner,

        v.

GARRET J. RIPA, Miami Field Office Director (ICE/ERO); **TODD LYONS,** Acting Director U.S. Immigration and Customs Enforcement; **MARKWAYNE MULLIN,** Secretary of Homeland Security; **TODD BLANCHE,** Acting United States Attorney General,

     Respondents.

**CIVIL NO.** 26-1458 (RAM)

<u>OPINION AND ORDER</u>

Pending before the Court is Petitioner Bartolo Zorrilla-Bautista ("Petitioner" or "Zorrilla")'s *Petition for Writ of Habeas Corpus* ("*Petition*"). (Docket No. 1). As well, Petitioner has filed a *Motion to Stay*. (Docket No. 5). For the reasons outlined below, the *Petition for Writ of Habeas Corpus* is **DENIED,** the *Motion to Stay* is **GRANTED IN PART** and **DENIED IN PART,** and the case is **DISMISSED WITH PREJUDICE.** Judgment shall be entered accordingly.

**I.   BACKGROUND**

On July 16, 2026, Petitioner filed an *Emergency Motion for Temporary Restraining Order* (the "*Emergency Motion*"). (Docket No. 2). Petitioner sought to preserve the status quo pending the

resolution of his *Petition for Writ of Habeas Corpus* (the "*Petition*") from earlier on the same day. (Docket Nos. 1 and 2).

In his filings, Zorrilla alleges that: (1) he is a national and citizen of the Dominican Republic; (2) in 2017 he entered Puerto Rico without undergoing proper admission procedures; and (3) thereafter, he married Mary Ann Orola Olmo, a United States citizen. (Docket Nos. 1 at 1-5, 2 at 3-4).

Zorrilla alleges that two days ago, on July 15, 2026, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). (Docket No. 2 at 1). Zorilla says he is currently detained in Guaynabo. Id. Zorrilla argues that he is not subject to mandatory detention under the Immigration and Nationality Act ("INA"). Id. at 3-4. He contends that his situation should be covered by 8 U.S.C. § 1226, which permits the discretionary release of detained aliens on bond. Id.

Earlier today, July 17, 2026, the Court denied the *Emergency Motion* and ordered Petitioner to show cause as to why the case should not be dismissed for failure to state a claim upon which relief can be granted in light of two prior rulings by this Court. *See* Alvarez-Felix v. Ramos, 2026 WL 438160, at *1 (D.P.R. 2026); Jerez v. Warden, San Juan Staging Facility, 2026 WL 1329858, at *1 (D.P.R. 2026). By the time the Court issued its ruling, however, Petitioner had already filed a *Motion to Stay* requesting that the Court hold his *Petition* in abeyance in exercise of its docket

Civil No. 26-1458(RAM)                                                                 3

management authority, or, in the alternative, for the Court to rule on the *Petition* without further delay. (Docket No. 5).

## II.  APPLICABLE LAW

### A. Habeas Corpus

Pursuant to 28 U.S.C. § 2241(c)(3), writ of habeas corpus may issue to individuals "in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has recognized that, under § 2241(c)(3), district courts possess jurisdiction to consider habeas challenges to the legality of the detention of noncitizens. *See* Rasul v. Bush, 542 U.S. 466, 483-84 (2004) ("Petitioners contend that they are being held in federal custody in violation of the laws of the United States...Section 2241, by its terms, requires nothing more."). The First Circuit has held that under § 2241, "[t]he burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner." Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (collecting cases).

### B. Relevant Detention Provisions of the INA

The INA governs the admission, inspection, apprehension, and removal of noncitizens within the United States, among other aspects of immigration. The present case concerns two INA provisions regarding detention, namely Sections 1225 and 1226.

   **i.    Section 1225**

   Section 1225 specifies when certain noncitizens are subject to mandatory detention. Pursuant to this section, an "applicant for admission" is defined as "[a]n **alien present** in the United States who has **not been admitted** or who **arrives in the United States** (**whether or not at a designated port of arrival**[)]." 8 U.S.C. § 1225(a)(1) (emphasis added). In its relevant part, Section 1225 provides that "in the case of an alien who is an **applicant for admission**, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien **shall be detained** for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

   Section 1225(a)(1) was added in 1996 when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (the "IIRIRA"), thereby "substantially amend[ing]" the INA. *See* Nken v. Holder, 556 U.S. 418, 423 (2009); Torres v. Barr, 976 F.3d 918, 927 (9th Cir. 2020). Before the passage of the IIRIRA, "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." Hing Sum v. Holder, 602 F.3d 1092, 1100 (9th Cir. 2010). The IIRIRA "addressed this anomaly by

substituting 'admission' for 'entry' and by replacing deportation and exclusion proceedings with a general 'removal' proceeding. Under the new regime, 'admission' now determines whether a non-citizen is subject to grounds of deportability or inadmissibility within the context of a removal proceeding." Id., *see also* Torres, 976 F.3d at 928 (noting that Section 1225(a)(1) "ensures that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission.'").

### ii.  Section 1226

For its part, Section 1226(a) governs the detention of "aliens," defined by the INA as "any person not a citizen or national of the United States." *See* 8 U.S.C. §§ 1101; 1226. Specifically, this section provides that "[o]n a warrant issued by the Attorney General, an alien **may be arrested and detained** pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). While the decision regarding removal is pending, the Attorney General **may continue to detain the arrested alien or release the alien on bond or conditional parole.** Id. In other words, "[u]nlike § 1225(b), § 1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on 'bond of at least $1,500 with security approved by, and containing conditions prescribed by, the

Attorney General.'" Buenrostro-Mendez v. Bondi, 166 F.4th 494, 499 (5th Cir. 2026) (citing 8 C.F.R. §§ 236.1(c)(8), 236.1(d), 1236.1(d)(1), 1003.19).

Notably, Section 1226(c) deems certain aliens ineligible for bond, namely those that have committed specific offenses listed at Section 1226(c)(1)(E)(i)-(ii).[1] *See also* Chavez v. Noem, 801 F. Supp. 3d 1133, 1141 (S.D. Cal. 2025) ("Section 1226(c) simply removed the Attorney General's detention discretion for aliens charged with specific—but not all—crimes. The Attorney General may still exercise [his] detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by § 1226(c)").

### III. DISCUSSION

As per Petitioner's *Motion to Stay* and the subsequent memorandum denying the *Emergency Motion* the Court has already issued, (Docket Nos. 5 and 6), the Court proceeds to the merits of the *Petition.*

As this Court has noted several times[2] with respect to the propriety of the Department of Homeland Security ("DHS")'s current

---

[1] Section 1226(c) was recently amended by the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), "to expand the category of covered crimes, and to require the detention not only of those who have been convicted of any of the newly added crimes but also of anyone who has been accused of one." Black v. Almodovar, 156 F.4th 171, 181 (2d Cir. 2025) (Nardini, J., Dissenting).

[2] Two examples are Alvarez-Felix v. Ramos, 2026 WL 438160, at *1 (D.P.R. 2026) and Jerez v. Warden, San Juan Staging Facility, 2026 WL 1329858, at *1 (D.P.R. 2026).

interpretation of 8 U.S.C. § 1225 vis-à-vis the mandatory detention

of aliens arrested in the interior of the United States:

> Neither party nor the Court are writing on a blank slate. The statutory construction question that is at the crux of this case has been the subject of myriad lawsuits throughout the nation and dutiful judges have reached divergent answers.[3] Having parsed through the statutes, the parties' submissions, and the authorities cited therein, the Court finds that the mandatory detention provision of 8 U.S.C. § 1225 applies[.]

Alvarez-Felix v. Ramos, 2026 WL 438160, at *1 (D.P.R. 2026); *see

also* Jerez v. Warden, San Juan Staging Facility, 2026 WL 1329858,

at *1 (D.P.R. 2026).

When resolving a dispute over the meaning of a statute, courts

"begin with the language of the statute itself" and must "first

'determine whether the language has a plain and unambiguous meaning

with regard to the particular dispute in the case.'" In re Fin.

Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d 121, 128 (1st Cir.

2019) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 340

(1997)). "The plainness or ambiguity of statutory language is

determined by reference to the language itself, the specific

context in which that language is used, and the broader context of

---

[3] For example, the following cases found that detention is discretionary in analogous cases: Gomes v. Hyde, 804 F. Supp. 3d 265, 278 (D. Mass. 2025); Armando Becerra Vargas v. Bondi, SA-25-cv-1023, 2025 WL 3300446 (W.D. Tex. Nov. 12, 2025); Guerrero Orellana v. Moniz, No. 25-CV-12664-PBS, 2025 WL 3033769 (D. Mass. Oct. 30, 2025). By contrast, these cases determined that mandatory detention is proper for petitioners with similar circumstances: Ramirez Melgar v. Bondi, No. 8:25CV555, 2025 WL 3496721 (D. Neb. Dec. 5, 2025); Rojas v. Olson, No. 25-CV-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); Alonzo v. Noem, No. 1:25-CV-01519 WBS SCR, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025).

the statute as a whole." Robinson, 519 U.S. at 341. Consequently, the Supreme Court has affirmed several times "that identical language may convey varying content when used in different statutes, sometimes even in different provisions of the same statute." Yates v. United States, 574 U.S. 528, 537 (2015) (collecting cases). "If the statute's language is plain, the sole function of the courts is to enforce it according to its terms. If, however, the language is not plain and unambiguous, [courts] then turn to other tools of statutory construction, such as legislative history." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d at 128 (internal quotations and citations omitted).

In the case at bar, as in Alvarez-Felix and Jerez, the Court finds that Section 1225(a)(1)'s definition of "applicants for admission" is unambiguous.

This section defines applicants for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival[)]." 8 U.S.C. § 1225(a)(1). The INA also defines the terms "admitted" and "admission" with respect to a noncitizen as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). In other words, an applicant for admission is a noncitizen present in the United States who either: (1) has not been given lawful entry into the United States after inspection

and authorization by an immigration officer; **or** (2) arrives in the United States, independent of whether they are at a point of entry. **Per the plain and unambiguous language of the statute, the term "applicant of admission" is <u>not</u> limited only to noncitizens seeking entry at a border given the distinction between those who are "present" and those who "arrive".** Rather, it includes all noncitizens in the United States who have not been inspected and granted admission, whether at a point of entry or elsewhere.

Other appellate courts have rejected the contention that "'seeking admission' can only refer to someone taking 'present-tense, affirmative action' to obtain lawful entry into the country because 'seeking' is a present-tense word. <u>Avila v. Bondi</u>, 170 F.4th 1128, 1134 (8th Cir. 2026). As explained by the Fifth Circuit:

> There is no material disjunction—by the terms of the statute or the English language—between the concept of "applying" for something and 'seeking' something. When a person applies for something, they are necessarily seeking it . . . [j]ust as an applicant to a college seeks admission, an applicant for admission to the United States is "seeking admission" to the same, regardless whether the person actively engages in further affirmative acts to gain admission. The everyday meaning of the statute's terms confirms that being an "applicant for admission" is not a condition independent from "seeking admission."

<u>Buenrostro-Mendez v. Bondi</u>, 166 F.4th at 502 (internal quotations and citations omitted).

Civil No. 26-1458(RAM)                                                    10

Furthermore, "[i]f Congress wanted to make clear that "seeking admission" was an independent requirement in the statute, it could have easily done so" by mandating detention under Section 1225 "'if the examining immigration officer determines that an alien [*is*] seeking admission [*and*] is not clearly ... entitled to be admitted[.]'" Avila, 170 F.4th at 1134. In that case "it would be clear that "seeking admission" is a standalone requirement [because] [t]he presence of the word 'and' would indicate that 'seeking admission' is an additional requirement for detention on par with the alien being 'not clearly ... entitled to be admitted.'" Id. at 1134-35. Because "the structure of the text does not indicate that [the] phrase ['seeking admission'] has standalone meaning, merely using it as a synonym for something else does not make it surplusage." Id. at 1135.

Moreover, the Court's interpretation that "applicants for admission" also encompasses noncitizens present within the United States beyond ports of entry who have not been admitted and that they are subject to mandatory detention is further supported by the INA's accompanying regulations. 8 C.F.R. § 235.3(b)(1)(ii) provides that:

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in

accordance with section 235(b)(2) [(8 U.S.C. § 1225(b)(2)] of the Act for a proceeding under section 240 of the Act.

Said 1997 regulatory provision evinces that the BIA's interpretation in Matter of YAJURE HURTADO is not a recent nor a new development. Nevertheless, it is ultimately the Court's duty to come to its own conclusion as to the meaning of the statute. Loper Bright Enterprises v. Raimondo, 6043 U.S. 369, 413 (2024) ("Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority").

This interpretation does not render Section 1226 redundant. "Because § 1226 is not limited to applicants for admission, it also covers numerous grounds of deportability, including for admitted aliens who overstay or violate the terms of their visas, engage in conduct that renders them removable, or were improperly admitted." Buenrostro-Mendez, 166 F.4th at 499. Conversely, if Section 1226(a) was applied to Petitioner and others similarly situated, it would nullify the plain meaning of Section 1225(a)(1)'s definition of applicant for admission by exempting non-citizens who have not been admitted into the United States from Section 1225(b)(2)'s mandatory detention provision. *See* Republic of Sudan v. Harrison, 587 U.S. 1, 12 (2019) (Courts should be "hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.").

By the same token, this ruling is supported by the Supreme Court's findings in Jennings v. Rodriguez, 583 U.S. 281 (2018). Therein, the Supreme Court similarly concluded that an "alien who arrives in the United States or **is present in this country but has not been admitted**, is treated as an applicant for admission. **Applicants for admission must be inspected by immigration officers to ensure that they may be admitted into the country** consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (emphasis added). Said applicants for admission may fall into different categories but all are subject to detention absent "urgent humanitarian reasons or significant public benefit." Id. at 287-288. The Supreme Court notes that "[e]ven once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls within one or more classes of deportable aliens." Id. at 288 (cleaned up). In other words, even if **admitted**, noncitizens may be subject to removal under the INA. The Jennings Court proceeds to explain that "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." Id. Therefore, per Jennings, Section 1226 applies noncitizens inspected and authorized to lawfully enter the United States. Nothing in Jennings limits Section 1225(b)(2)'s application to individuals at the border or other points of entry. *See also* Alberto Rodriguez, 2025 WL 3754411, at *12 (finding that

there may be overlap between Sections 1225 and 1226 because aliens present in the United States who have not been admitted defined in Section 1225(a)(1) and to whom Section 1225(b)(2) applies "include—as a matter of plain language—the same group of aliens to whom the Supreme Court [in Jennings] stated § 1226(a) applies, that is 'aliens already present in the United States'").

Petitioner necessarily falls within the Court's interpretation of the aforementioned definition, as he concededly: (1) is not a citizen of the United States; (2) entered the United States without undergoing proper admission procedures (i.e., without being inspected and admitted); and (3) is present in the United States. (Docket Nos. 1 at 1-5, 2 at 3-4). As such, he is subject to the mandatory detention provisions for "applicants for admission" under Section 1225(b)(2).

### V. CONCLUSION

The Court's duty is "to interpret the law not to re-write it." In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 919 F.3d at 132. This Court is of the view that the plain meaning of Section 1225(a)(1) and Section 1225(b)(2) compel Zorrilla's detention and render him ineligible for a bond hearing under Section 1226. Given the above, Petitioner has failed to state a claim upon which relief can be granted.

As per Petitioner's request in his *Motion to Stay* from earlier today for a ruling on the *Petition*, the Court rules as follows:

Civil No. 26-1458(RAM)                                                    14

the *Petition for Writ of Habeas Corpus* is **DENIED,** the *Motion to Stay* is **GRANTED IN PART** and **DENIED IN PART,** and the case is **DISMISSED WITH PREJUDICE.**

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 17th day of July 2026.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge